## Coolbaugh v. Fitzgerald. No. 2

*Romeyn F. Culver,* for plaintiff.

*George W. Keitel,* Deputy Attorney General, for Commonwealth.

CULVER, P. J., November 2, 1942.—This proceeding is a mandamus proceeding to compel defendant, W. P. Fitzgerald, who was the operator of an official inspection station at Towanda, Bradford County, Pa., to deliver to plaintiff, Merwin Coolbaugh, a certificate of inspection for a Chevrolet automobile owned and operated by plaintiff, it having been inspected by defendant and found to meet all requirements, and therefore entitled to a certificate of inspection and the fee for inspection having been paid or tendered to defendant.

An alternative mandamus issued July 24, 1942, and service thereof was accepted by defendant the same day. The hearing was fixed for July 30, 1942. Defendant filed no answer, but orally stated to the court that the facts set forth in the petition were true and he was willing to deliver the certificate of inspection but had been forbidden so to do by a member of the State Police.

After full hearing and consideration, the court made the following order.

*"Order.*

And now, to wit, July 30, 1942, after due and careful consideration a peremptory mandamus is directed

to immediately issue against defendant, William P. Fitzgerald, commanding him to immediately deliver, upon receipt of the proper official inspection fee, to plaintiff a certificate of inspection as provided by the laws of this Commonwealth, costs to be paid by defendant.

By the Court,

CHAS. M. CULVER, P. J."

See Coolbaugh v. Fitzgerald, 45 D. & C. 105.

Peremptory mandamus issued, was duly executed, and defendant delivered the certificate of inspection to plaintiff, and it would seem that the question became "moot". On September 26, 1942, the Attorney General made an application to the court to open the proceedings and permit him to intervene in the above case.

This request to intervene was granted by the court and a hearing fixed thereon for October 16, 1942, at 10 a.m.

On October 16, 1942, the case came on for further hearing before the court, and a Deputy Attorney General appeared and called one witness to give testimony, and offered in evidence certain rules and regulations of the department relating to inspection stations.

At this hearing the argument of the Deputy Attorney General seems based upon the assumption that the question involved in this case is whether or not an inspection certificate must be affixed on the lower right-hand corner of the windshield of the car inspected. As we view the case this question is not involved.

In these proceedings, it seems the only question involved is whether or not defendant was in duty bound to deliver to plaintiff a certificate of inspection, plaintiff's car having been inspected and having met all the requirements to entitle it to a certificate and the inspection fee having been tendered to defendant.

The rule promulgated by the Secretary of Revenue on which the intervening defendant bases its contention reads as follows:

"When cars have successfully passed inspection, and meet the requirements of the law, stickers should be affixed to the windshield in the lower right-hand corner. This will protect the station from promiscuous use of stickers. . . ."

This rule does not provide that the inspection station should affix the certificate to the lower right-hand corner of the windshield, nor does it specifically declare that it *shall* be so affixed. It provides that it *should* be, but, as we interpret the law, this is the duty of the owner and operator of the car to affix it, so it will be properly displayed, and it is not the duty of the inspection station to so affix it.

In this case, the car in question had previously been inspected, and carried a certificate of inspection which did not expire until July 31st. If it be conceded that the secretary has authority to direct where on the windshield of the car a certificate of inspection shall be placed, it is then the duty of the owner and operator to affix it accordingly, but we are not convinced that the inspection station has any responsibility in that respect. If the owner and operator does not place the inspection certificate in a legal position on the car he is liable to arrest and punishment therefor. The act of assembly governing the matter is the Act of June 27, 1939, P. L. 1135, sec. 19, amending section 823 of The Vehicle Code of May 1, 1929, P. L. 905, and provides, inter alia, in subsection (*a*) :

". . . shall submit such motor vehicle, trailer, or semi-trailer to such inspection of its mechanism and equipment as may be designated by the secretary . . ." and in subsection (*c*) :

"The secretary is hereby authorized to designate, furnish instructions *to*, supervise, and issue inspection certificates *to*, and collect the fees therefor *from*, the official inspection stations, as provided in this act, for the purpose of such inspections." (Italics supplied.)

As we interpret this requirement, it authorizes the secretary to designate the standard for inspections to

the inspection stations. It does not refer to the owner or operator of the car. His duties are provided in subsection (*h*):

"It shall be unlawful to operate any motor vehicle, trailer, or semi-trailer on a highway (1) during an inspection period, unless the motor vehicle, trailer, or semi-trailer has been inspected during the present or last preceding inspection period, and (2) after the close of any inspection period, unless it has been inspected during the last preceding inspection period, and (3) *a certificate for the proper period furnished and displayed.* (Italics supplied.)

Subsection (*d*) provides:

"Such official inspection stations, when duly authorized, shall issue official certificates of inspection for every motor vehicle, trailer, or semi-trailer so inspected, on a form furnished by the department."

The remainder of the section, of course, provides, in substance, that such certificate shall not be issued unless the motor vehicle inspected passes such inspection.

Subsection (*f*) provides:

"If the secretary finds that the provisions of this act, or the directions of the secretary, are not being complied with, or that the business of such stations in connection with such inspections is being improperly conducted, he may suspend the designation of any such stations."

We interpret this to mean that if the inspection station does not follow the directions of the secretary as to the standard of inspection his license may be revoked.

Thus far in the act there is no provision giving authority to the secretary to compel the inspection station to affix the certificate to the car inspected. It simply directs him to issue the official certificate of inspection for each motor vehicle which meets all the requirements.

Subsection (*j*) refers to the inspection of vehicles to be used for the transportation of school children

and provides that in addition to the certificate issued by the inspection station the owner of such school bus shall in the month of August or before the bus is used for transportation of school children submit such vehicle to the Pennsylvania Motor Police to determine whether ". . . such vehicle conforms with the provisions of this act and the regulations of the State Council of Education of Pennsylvania."

And subsection (*k*) provides:

"No vehicle required to obtain a certificate of inspection under the provisions of subsection (*j*) of this section shall be operated without prominently displaying such certificate, *as may be directed by the secretary,* in addition to any other certificate now or hereafter required by law, on any of the highways of this Commonwealth." (Italics supplied.)

This subsection (*k*) relating to school buses expressly provides that the certificate issued by the Pennsylvania Motor Police shall be displayed "as may be directed by the secretary."

This provision is not found in the laws regulating the inspection and operation of ordinary motor vehicles not used in transporting school children.

It is conceded by all in this case that an inspection certificate shall be issued only when the motor vehicle inspected meets the requirements as to its mechanical condition, and it is conceded by all parties that the Chevrolet motor vehicle involved in this proceeding did meet all such requirements and was entitled to receive a certificate of inspection. We are, therefore, of opinion that the case was properly disposed of by the order of July 30, 1942, directing the issuance of a peremptory mandamus. We believe it was the duty of the inspection station to issue the certificate to the owner and operator of the motor vehicle in question, and that when he so did his responsibility in the matter ceased, except that he was to send a copy of the same to the department at Harrisburg.

The Deputy Attorney General suggests that unless the inspection station affixes the certificate to the windshield of the car inspected the owner of the car, after he received it, might place it on some other automobile. If any such danger exists, it can easily be remedied by the department designating on the inspection certificate the car to which it is issued, in the same manner as it does in licensing cars and delivering plates therefor.

It is, therefore, ordered that the order made by this court on July 30, 1942, shall remain in full force. An exception is noted for the intervening defendant and a bill is sealed.